Your Honor, the final case on the docket this morning is 2-23-0045. People of the State of Illinois Plaintiff Appellee v. Damon Lewis, Defendant Appellant. Arguing on behalf of the Appellant, Mr. John W. Radasevich. Arguing on behalf of the Appellee, Ms. Victoria E. Joseph. Thank you. Mr. Radasevich, you may proceed. Good afternoon. May it please the Court. I'm John Radasevich of Delray Law Group on behalf of the Appellant. A defendant is unfit if they are unable to understand the nature of the proceedings against them or assist their counsel in their defense. Ms. Lewis in this case was found unfit, and it was determined that with medications she could be restored to fitness within a year. That year period came and went, and she wasn't medicated and had been restored to fitness. The Court then ordered an extended 15-month treatment period so that they could continue their attempts to restore her to fitness. Again, she was unmedicated, and that period lapsed. She then came up, or the case I should say came up for a civil commitment hearing under subsection G-2 which this Court has stated is a potentially long-term civil commitment regime that significantly deprives her of her liberty for the maximum sentence under the law. And she was charged with a Class II felony. She suffers from severe schizoaffective disorder, bipolar type. Nonetheless, the State's Attorney had issued a writ to have her brought from the Elgin Mental Health Center to the Lake County Circuit Court so that she could participate in the proceedings. And indeed, under section 16C of the Fitness Hearing Act, well, it's not actually an act, but the provision of the Code of Criminal Procedure that pertains to fitness hearings states that a defendant has a right to be present at every hearing on the issue of his fitness. And then it goes on to say that the defendant's presence may be waived only if there's filed with the court a certificate stating that the defendant's physically unable to be present and the reasons therefore. Can I ask this? Sure. In interpreting the language of the statute and the ramifications, we should interpret it in such a way as it does not lead to absurd results, correct? That's as with any statute. However, specifically because of the liberty interest at stake, mental health, and particularly dealing with someone who has impaired understanding of the court processes, cases have said that you need to interpret the statute strictly. So you would apply the plain language of the statute and reach a conclusion. The statute plainly says that you have a right to be present at every hearing. The statute basically is misleading because it says that you shall only be waived by a certification by a doctor. Well, I think what the statute should have said was the right may be revoked by a certification by a doctor that the person is not competent to be present or whatever. That is not a waiver. A waiver is a voluntary waiver of a right, and it's not done by someone's doctor. It's done by them individually. So to say that it's a waiver is incorrect. However, the fact that she refused to appear is a voluntary act, I think, unless she was under duress, that indicated that she was waiving her right to be present, which is, I think, not required to be listed in the statute because it is so ingrained in our case law that if you decide that you don't want to do something, it becomes a waiver if you are fully and voluntarily informed. I'm curious as to why the attorney objected and claimed that she had a right to be present when she apparently refused to carry out or have that right enforced. And then when the case was continued, the attorney didn't contact, from what I can tell at least, the client to find out what was in the client's mind or inclination insofar as whether or not she wanted to attend. Because if the client says, I don't want to attend, is the lawyer going to determine that she's incompetent and he's not going to allow her to waive her right? Or does he accede and withdraw the objection? Well, there's a couple of things packed in there. I think that the waiver provisions of Subsection C or Section C add a layer onto the waiver analysis. Your Honor, you are correct that generally a waiver is when you relinquish, that's a knowing and voluntary waiver of a known right. So you have to know what it is you're giving up. In addition to that, I believe that the statute provides that you also have to have a doctor's letter saying why it is that this person can't attend. How does a doctor's certification constitute a waiver? I don't think in and of itself it constitutes a waiver. I think the court would still have to conduct the normal waiver analysis to determine. So I don't think a doctor could waive it on the defendant's behalf. And frankly, because there's different language in the fitness statute than there is under the mental health act. We can call it a revocation, we can call it a suspension, or you can call it whatever you want. You can call it invited error because if she refuses to want to attend, for you to argue that it's error when your client is the one who refused to abide by the writ, why aren't you supposed to be a stop for making this argument when it's in conflict with what your client did? Well, a couple of reasons. First of all, the writ directed the Department of Human Services to transport her to court. It didn't direct her to do anything. So the writ directed them to bring her so that she could be prosecuted, knowing that she's mentally ill and that she's in their custody and control. And second of all, in cases where we've considered waiver, I direct the court to In Re Commitment of Edwards. That was an SDP case, Sexually Violent Persons Act case from 2021 out of the first district. And in that case, there was an order entered where the person subject to the petition, the civil commitment petition, was told step-by-step by the trial court, you have the right to be here, but if you're not here, I'm going to consider it a waiver. You're being told now what your rights are at the hearing. This is what's going to happen. The court, the attorney who wasn't present refused to attend. The attorney objected. And the court in its analysis said that they talked about the different waiver provisions under mental health code, not just the mental health code, the Mental Health Code and Developmental Disabilities Act, the Mental Health Act, and the criminal code and the criminal context. In each of those cases, they say, well, the person has a right to be there.  So the person is entitled to some notice that there's going to be a trial that's going to take place, that there's going to be a hearing that's going to take place, that they know the purpose of the hearing, be at least told that. The court found that the Sexually Violent Persons Act didn't contain that, didn't contain that. And so it kind of confounded the waiver analysis. But they said, well, in this case, in that case, the person had been read the order of the court by the, I think it was Rushville or whatever facility, by Rushville staff. And so he knew very well that he was giving up. And so in that case, his refusal could be considered a waiver. A refusal is not automatically a waiver. It's only a waiver. A waiver is a legal term. Refusal is something that people do. I refuse to attend, and does my refusal to attend constitute a waiver? It might. It might not. In this case, it does not. In this case, it does not. There's not any indication that she was ever told that a G-2 hearing was going to occur or what a G-2 hearing was. And so I think the reason for the doctor, the reason the code contains a provision, it doesn't allow the attorney to waive her appearance. An attorney could waive the appearance maybe at a state, and the attorney in this case did. I think the record shows that so as not to disrupt treatment when they were scheduled. Even a couple weeks before this hearing, waived her appearance, didn't want her transported. And I think that that's permissible. That's not a hearing on fitness. It doesn't fit the definition of a hearing on the issue of fitness under 16C. So an attorney can't waive it. Even the client can't waive it unless there's, because they're unfit, because they don't understand the nature of the proceedings against them, because they're unable to cooperate with their attorney. I mean, it kind of makes sense that the attorney can't do it and they can't do it. We need the doctor coming in saying why it is they're physically unable to be there and the reasons, and the reasons why. So there has to be something, there has to be something wrong. Let me ask you this. It says physically unable. Does that mean not having the ability to control your behaviors? She's aggressive, she's violent, et cetera. Or does it simply mean this person physically should not be removed from the facility they're in? I think it, I could probably apply to either. How do we take that word physically unable and sort of morph it into a determination, as here the doctor said, you know, all these reasons why she shouldn't be here? Well, first of all, if someone were suffering from a serious medical issue. Right. That's right. Is that what the statute's purpose is? No. I don't think it's just that. I think it's also that. How do we get there? How do we get to your position that it includes more than just a purely physical medical reason why they can't be in court? Well, I think we have to consider the fact that we're talking about people who are either committed to the custody of the jail. Yeah, I get you. Or people who are out of custody on bond who are saying, I can't make it to this hearing. Actually, I don't think that's even possible because they would have been committed to. Right. So this is only going to be people who are in some type of restriction of their liberty. But it says physically. How do I get around that? Well, I think the physical. Is there a liberal view of it? I think you can. I think the court can take a liberal reading of it. But there's a limit. And in this case, I don't think that the – certainly there were disruptive behaviors. But there was no testimony that it would pose a risk to her physical safety to transport her. And that, frankly, may have been to answer, Justice McClary, your question, why did the attorney do what the attorney did. The attorney was saying, well, listen, I don't want her physically harmed. If you're telling me you're going to physically harm her, that's something different. But I do think that they have to make some reasonable efforts to bring her here. That's what Mr. Trisna said to the trial court. And the judge was like, well, what do you want, drag her out of the cell and slam into – and he said, no, I don't want her hurt. But at this point, all that's been done is someone said, hey, would you like to go to court? And she said, no, get out of here. There are situations where criminal defendants refuse to leave the holding cell or refuse to leave the jail to come to court to be sentenced. Now, they have – I think they have a right to be present during all proceedings. And, you know, the statute doesn't contain a statement indicating that their presence is waived if their non-compass is certified by a doctor. But I think the case law is pretty well established that if they decide they're not going to want to move, they're not forced to be moved unless, quote-unquote, the judge orders them to be moved and shackled or muzzled or whatever it is. You know, if they're spitting, then you put a face mask on them or whatever. So it's nice – it's a nice argument you're making, but I don't think it holds water that every type of waiver or refusal to participate has to be set forth in a statute in order for a judge to authorizedly say, the person has refused to come, I'm not going to jeopardize their safety or staff to force this person to be put in a straitjacket or on a lorry and tied down and brought to court. Well, Justice McClaren, that's not what happened in this case, though, anyway. In your example about someone who's in the holding cell, refuses to come out, frankly, if they had not been advised that a sentencing could take place in their absence and absentia and then went forward, that sentencing could be reversed. So they have to at least have been told. And your argument here is that the defendant was never told this is for basically a sentencing hearing. Certainly no evidence that she was ever told that this was an extension for the next however many years, I guess it would extend it up to seven years. Is there any indication in the record that if someone had recited that to her that she understood what it meant? I don't know that she can. She's unfit, so she doesn't understand the nature of the proceedings against her and can't participate with the attorney anyway. But that does not mean she would not understand that her future is unaligned. Potentially she could have. Like, if you don't come to court, you're going to be, you're going to, maybe, Justice Burkett, I'm sorry. No, that's okay. If they had said, would you like to go to court, they're deciding whether you're going to have to remain here for the next seven years or you can go home now. But that's my point. I think you're, and that's what your argument is, that there's no evidence in the record that she knew the gravity of the hearing that was about to take place. Absolutely not. Absolutely not. And I'll address my next slide. I can't remember where I, I'll do it again. Any other questions? With regard to the merits, I mean, did you want to address the merits of the trial court's finding? I will just say this. I will just say this. What happened, was there a prep relief, if you recall? Was there a prep relief for, in the motion to reconsider case, reverse remand, releaser, give her a Mercedes, what? Well, I think the hearing didn't take place in a timely manner, so we're asking for reversal because I think at this point remand were well past the October 14th, 2022 date. I didn't remember what the other point was, and I can wait to raise it in my other. All you say is reverse the decision to the trial court waiving Lewis's presence at the G2 hearing and finding Lewis constituted a serious threat. So if we reverse it, then we would remand it for further proceedings consistent with what the statute says. And then the attorney and defense counsel could claim whether or not there was a timely or untimely prosecution. But all you've asked for is reversal of the judgment. That's correct. And I think your analysis is correct, Justice. You'll have an opportunity to make your vote. Thank you. Ms. Joseph, you may proceed. Good afternoon, Your Honor. May it please the court, counsel. I'm Victoria Joseph, and I represent the people of the state of Illinois. Justice McClaren's point about the language of this statute is pretty much on point. The strictest reading of the plain language that defendant is asking for is basically that you can only waive if under the statute, which means counsel can never waive a client's presence, which in a case like this at a G2 hearing would potentially lead to a claim of ineffective assistance of counsel if a client is going to behave as she does in her facility, showing the court directly that she could be a danger to the public. Her own behaviors, her aggressive behaviors, her spitting, if she started throwing things in court, she herself would then be a part of the clear and convincing evidence that a court could find her to be a serious threat. That could be a trial strategy in not wanting a defendant present. It also means that if you have a defendant who does not want to be there, you are essentially dragging them to court insofar as they are physically capable of attending. Unlike the Mental Health Code, which addresses both a physical and an emotional harm component, under Section 3806, talking about presence at a hearing under the Mental Health Code, this one only, as Your Honor, Justice Jorgenson pointed out, only talks about physical incapacity. So this is essentially stripping away any dignity that an unfit person has left, that they have no control over their personal autonomy. How can it be a knowing refusal to come if you start out with the proposition that the defendant is unfit, by definition, does not understand the proceedings against them? How do I get past that? Because the defendant does not lose all of her rights because she is unfit. Right, and her right to be present. Her right to be present, which concomitantly should be a right not to be present. And here... But I have to give up that right knowingly and voluntarily. Where's the knowingly? See, the... I do, I do. She's unfit, so I can recite these words to the microphone here, but if it doesn't understand what I'm saying or the consequences of it, how does she then give up her right to be present? Because the alternative is a doctor does say, I've examined her within the last seven days, blah, blah, blah, blah, blah, and therefore I conclude and her presence is way. Now, I agree it's annoying and voluntary usually, but nonetheless, that's the word the legislature picked. So we're stuck with it. And didn't that, did that happen here? Did we get what the doctor testified to? Insofar as her refusal? No, there was not a doctor's testimony about her refusal, other than in the testimony about her status as to serious wreck, talking about the refusal there. There's a case law relating to people who are committed involuntarily on an emergency basis, and unfortunately or fortunately, depending on your perspective, the Supreme Court claimed that these people who were supposed to be unfit could waive their presence or waive the necessity for a hearing within 72 hours or whatever. And so there is some case law out there that suggests that unfit individuals have the ability, according to the Supreme Court, to waive what would appear to be something that is beyond the ken of someone who is unfit or is in need of emergency medical treatment. Well, even in the case, it was Fourth District's case of matter of corona, where at page 764, pinpoint site 764, is talking about the due process right to be present at a commitment hearing, comparing it to the Sixth Amendment right to be present at trial, and that a refusal to attend is still enough to constitute a valid waiver, even in the commitment setting. And we're also looking at the overall concern of whether the defendant here was afforded all of the procedural safeguards of her presence at the hearing and the protections of due process under the statute. And if she was, then her rejection of that protection should also be respected as much. And it wasn't just treating her refusal to come and moving forward. This was continuing the hearing, giving her the opportunity to attend in the really least restrictive and least invasive way possible, attending the hearing remotely, which at the time of the hearing in 2022, we already know the Supreme Court was expressing its favor and support for remote hearings. That opportunity was given to her. Is there any evidence in the record that she knew the gravity of the hearing? Your Honor, I do not believe we have an entire record showing the entire discharge hearing. So we don't have all of the reports of proceeding of all the prior hearings to know. I know she was present at the discharge hearing. I don't believe that was included in the record on appeal. And she even refused to come at her initial fitness hearing. At that point, there were no objections made by anybody, and they proceeded on the fitness hearing without her presence there either. So here we— I know it sounds trite, but regardless of her condition, didn't she have a right to know what was at stake at that hearing? As part of her procedural due process, she has the right to notice and the opportunity to be heard. That is correct, Your Honor. How can we possibly affirm that that's not the case? Insofar as we have an incomplete record to know whether she was told that at any prior hearing, that— No, no, it's not whether someone recited the words. Is there evidence in the record that she understood it? Again, we're starting with someone who's been found unfit. And after a year and after another 15 months, how can we, on that record, determine that she understood what a G-2 hearing was? Based on the record they have before us, there would be nothing there. Because unfortunately, most of the hearings we only have in the common law record that have reports of very general statements about what happened at that hearing, including the discharge hearing that she was in attendance at. However, in this case, as Justice McClurin pointed out, they are only asking for a reversal in this regard, and that would not be a straight reversal and an entire invalidation to the point where she is released is not the procedure that would happen here, both because in the case where she was afforded the safeguards, the procedural safeguards to attend this meeting, and there is no evidence that she has been prejudiced by the failure to strictly comply. Your Honor is correct that this would be remanded for other procedures. Was there anything in the record to indicate that the attorney had conferred with the client? No. And advised the client that she had a right to be present? And asked the client whether or not the client wished to be present? Or was there any evidence to indicate that this conversation was even understood by this woman? There does not appear to be any evidence in the record that there was any contact at the hearing when defense counsel wished to put the defendant on the stand and complained that they were denied the right to her testimony. It was reported that there were no efforts made by defense counsel to contact the defendant. They were relying solely on the writ of the people. There was a statement from her caseworker that on October 18th she refused to go to court or talk to her attorney via Zoom, so there's no indication that there was any conversation between the defendant If she refused to talk to her attorney, she couldn't be advised of her rights? If she was refusing to talk to her attorney, we can assume on that date she was not advised of anything further by her counsel. Unless of course she was advised by a social worker. And that we do not know, Your Honor. Okay. We only have the fact that counsel did not appear to provide any other means of contacting her and made no proper on the record as to what evidence counsel desired to present to the court through her testimony. Your Honors, if you are sticking with the strictest interpretation of the statute, the people would only strongly urge Your Honors to make note of the concerns that Your Honors have raised today about the very narrow provisions under which waiver is being accepted in this case. And hopefully that will let the legislature look between the two very similar statutes and maybe address this in a better way in the future. Because the current statute does not provide for this situation as the mental health court statute does. And the legislature is obviously aware that they could use the language in both cases, uses the word refusal in one, doesn't even address that as a possibility in the other. So under the strictest interpretation, we just would very much urge this court to note for the legislature that there are some serious concerns about what this means for a defendant. Would you agree that, and I don't want to put you on the spot even though you're representing the state, but do you agree that if the only waiver appropriate or possible is the certification by a doctor and the individual is unfit and therefore can't waive her presence, that it means that in every instance in which case there is a writ issued, it has to be enforced and whatever force is necessary has to be invoked in order to bring the individual before the court? That is a complete travesty of human dignity, Your Honor. Pardon? That would be a complete travesty of human dignity. So no, I do not agree with that. I do not agree that that should be the result of this statute, that that would be an absurd and unjust result. Would it be appropriate, then, that would trigger the state to bring a physician in to examine her and file the certificate that the statute alludes to, to say, for these reasons, she should not be physically brought to a courthouse, or, in fact, she shouldn't leave the facility, let alone brought to court? And, again, it's, as Your Honor pointed out, it's the limiting words of physical and physically unable. Right. So you're still limited if a person... I mean, counsel said let's get a more liberal approach to those words, physically unable. Physically unable because I will harm myself. Physically unable because I become so schizophrenic about or paranoid, whatever the issue might be, I can't, this patient should not leave a room, this patient should not leave the facility. Put into a courtroom, this patient will... Well, it's the, and it's unfortunately the double-edged standard of interpreting involuntary commitment statutes to a very narrow construction. And you can't narrowly construe one part of it and broadly construe another. It's a little bit... I'm talking about waiver here. And, well, anyway, fair enough. And I don't mean to be shooting the messenger here. I apologize. That's okay, Your Honor. Any other questions? No, sir. Thank you. Thank you. Mr. Rogasevich, you may proceed. Thank you. I didn't want to address the issue of the writ and does that have to be enforced by any means. I think that is the appropriate circumstance for either the department or the state or the defense attorney to secure a doctor's letter saying that this would be inappropriate under this case, that this degree of force being utilized against this person would be such a destabilizing factor that this should not occur. So I think that's the... And then that constitutes a waiver. That would be a waiver then. That would be a waiver. I think that would be a perfect scenario. And before we get to that, I mean, that's kind of a nuclear option. What happened in this case, though, was kind of the polar opposite where they said, would you like to go? There's gradations along the way. I'm having a problem with the concept of a waiver being executed by a third party who is claiming that the person is unfit. And if they're unfit, do they have the ability to waive? And if they don't, then they have to be there. I can understand the intent of the legislature, which I believe was, if a doctor would testify that this person is incapacitated, which has nothing to do with SINR or fitness to stand trial or to assist her counsel in the representation of her interests, I don't know where a doctor would come to that unless he says that she is in such dire straits that she couldn't participate knowingly or consciously in the proceedings. But beyond that, I don't see how you get around not bringing her in with, according to the statute as it's allegedly written, if we're going to reverse this and come up with the idea that she can knowingly waive her or waive it by supposedly being apprised that she has some liberty interests that are being affected by the proceedings and she can decide whether or not she wants to be present or not. You know, Justice, when you frame it that way, it almost makes more sense to me then because I can imagine a scenario where a person says, I don't want to come. The trial court would then say, could instruct the social worker and the staff at whatever mental health center it was to tell her that this hearing is to decide whether you will remain there or potentially could go home. Do you still not want to come? And if the person still says no, it says a doctor, it can include a psychiatrist, who could say that by forcing this person, and if you are compelled to come, will you resist? And a doctor can, under those circumstances, then, because it's not just a doctor's certificate doesn't say, you know, doctor so-and-so says they shouldn't come, they're waiving. They have to state the reasons they're for. And so they have to list out the reasons. And I can understand in that scenario where the person has expressed a desire not to come. We're at that nuclear stage. And the question is, you know, are we going to force them into the truck or not? And then we have the doctor go in, and they try to make this social worker doctor go in and make these explanations to them, and they say, no, I'm not going to come. To answer your question earlier, if I had a client who didn't want to come under no circumstances, wanted to come to this, frankly, I would have a broker. I would have that conversation with someone from my staff or someone else to say that, no, they're not going to come, or would you resist if you did? And then I would contact the institution or the forensic treatment program to try to obtain a certificate of some sort. In his testimony, did Dr. Cummins discuss the defendant's resistance to come to court? No. There was a brief discussion, but it was only what had been relayed before. And I don't think we were at DEFCON 5. I mean, she'd only been asked. And were there disruptive behaviors in the institution historically? Yes. Was she exhibiting them at that moment? No. There was also evidence. I mean, if we're going to – there was also evidence that she roamed freely. That she roamed freely around the institution and actually walked out away from the person at the time. Now, Mr. Chris, the defense counsel had suggested, well, why don't you direct her to the vehicle and see if she'll get into the vehicle? That's different than tackling her and restraining her in a straitjacket and dragging her to court. I mean, that's DEFCON 5. We were nowhere near there. We were nowhere near there. And I can understand in those instances where a person has been told, we don't know if they understand it. We're trying to do everything we can to see if this is a knowing voluntary waiver. And then we have a doctor come in and say, listen, if you do this, you're going to really disrupt them. And if they are committed again, they're going to be in a worse situation. Can you rationalize why the defense counsel didn't contact his client to find out what was going on and why and whether or not she even knew what was going on? Can I rationalize? Can I think of a valid strategy? Yes. I think several. For one, it sounds like he did and there wasn't a call. I mean, it needs to be said. I mean, this hearing was scheduled the day before the time frame was going to run. The day before the time frame was going to run. If they don't get a hearing done, then there is no G-2. The next seven years, she's free for the next seven years. That's a valid strategy concern for a defense attorney. It's like running a speedy trial clock out. So, yes, and it's not his duty, frankly, to do that. It's his duty now to talk to her about the case, but it sounds like he did try. It sounds like he did try and she refused. After the case was continued, he should or shouldn't have at least contacted her? That I don't know if he did or didn't. He may have. I don't know if he did or didn't. I do know that after the case was continued, there wasn't a doctor's certificate on the next date. I mean, I don't know what. A doctor's certificate. There wasn't a doctor's certificate either. So is your position it's the state's burden to get that certificate? I think either party could get the certificate. Good, but push comes to shove. Or the forensic treatment program could just supply it to the attorneys. I don't think it's certainly in a position, we have to imagine a scenario, where it's the state who's going to want to go forward without, I think whatever party wants to go forward, without a need to secure that certificate. The defense counsel in that predicament, it's, you know, catch 22. You want to do what's best for your client in terms of both mental health but also liberty at the same time, right? That's correct. That's correct. And just to address one final point about reversal, remand, outright, I think the timelines if you did reverse are probably blown, but the state could always file a petition to commit her under a different act and observe the procedural safeguards. It doesn't have to be G-2 for a definite period. There's different provisions that they could seek if she is presently a danger today. There was evidence that they were petitioning to medicate her after, you know, two and a half years. Maybe that happened and maybe she's no longer dangerous. I don't know. I don't know the answer to that. But certainly if you were to reverse, it's not as though we're unleashing a violently mentally ill person into the public. There are other responsible parties who can take appropriate action. Unless there are other questions, I have nothing further. Could we reverse a remand for a retrospective hearing just on whether or not the defendant was told the nature of the hearing? Yes, but then it would have to be a retrospective. It would have to be at the time on the 14th. Right. Or the 13th when we do that. We've done it before for retrospective fitness hearings. There is precedence. That's correct. I think you could. But then it's, those are all done because they have to reconstruct someone's. That's the middle of the road. But that would require some testimony that she was told. And to the best of their ability, they advised her what was going on. But even if you, even if the court were to do that, we still don't have the certificate. There's still not a certificate of preference not to come, having been told that. I still don't think it's us to waiver. Right. So I don't know that there would be any utility necessarily in that. Thank you. Thank you. We'll take the case under advisement. Court's adjourned.